**Georges HANZI and Cheryl Hanzi, Appellants,**

v.

**Stephen R. BAILEY, M.D., Appellee.**

**No. 04–00–00245–CV.**

Court of Appeals of Texas, San Antonio.

March 7, 2001.

Rehearing Overruled March 28, 2001.

Rochel J. Lemler, Lemler & Associates, P.C., Ted H. Roberts, Law Office of Ted H. Roberts, San Antonio, for Appellant.

Laura A. Cavaretta, Plunkett & Gibson, Inc., George F. Evans, Jr., Joseph M. Dunn, Evans, Rowe & Rocheleau, P.C., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, KAREN ANGELINI, Justice.

## OPINION

ALMA L. LÓPEZ, Justice.

This appeal arises from a health care liability claim governed by the Medical Liability and Insurance Improvement Act ("article 4590i"). *See* TEX.REV.CIV.STAT. ANN. art. 4590i, §§ 1.01–16.02 (Vernon Supp.2000). Appellants, Georges Hanzi and Cheryl Hanzi ("the Hanzis") appeal the trial court's judgment excluding the expert report and dismissing the case against appellee, Stephen R. Bailey, M.D.

Because we find that the trial court abused its discretion, we reverse the trial court's judgment and remand the cause to the trial court.

### Factual and Procedural Background

On August 19, 1994, Georges Hanzi underwent surgery to replace the aortic valve in his heart with a mechanical prosthetic valve. Following the surgery, Dr. Stephen Bailey, a licensed physician who is board certified in Internal Medicine with a subspecialty in Cardiovascular Disease, placed Mr. Hanzi on Coumadin therapy to prevent the formation of blood clots around the prosthetic valve. Coumadin is an anticoagulant—a blood thinner, which is prescribed for the prophylaxis and treatment of the thromboembolic complications associated with heart valve replacement.

During the course of treatment, Mr. Hanzi's Coumadin dosage (found in INR levels) was deficient in six of eight tests done in 1996 and early 1997. On March 6, 1997, Mr. Hanzi suffered an embolism of his prosthetic heart valve, which caused him to have a stroke. In the emergency room, Dr. Christopher Casey, a cardiologist, found that Mr. Hanzi had an INR level of 1.0. The recommended therapeutic INR range for a patient with a mechanical prosthetic aortic valve is the target goal of 2.5 to 3.5. Dr. Casey found that the embolus which caused Mr. Hanzi's stroke was secondary to inadequate Coumadin therapy.

On March 8, 1999, the Hanzis filed a lawsuit against Dr. Bailey and Betty J. Iverson, R.N.,[1] alleging they were negligent by: (1) failing to properly monitor Mr. Hanzi's Coumadin therapy; (2) failing to notify Mr. Hanzi of his low INR, PT, and PTT levels; and (3) failing to refer Mr. Hanzi to a more qualified health care

---

1. The Hanzis later nonsuited Betty J. Iverson, R.N. on October 11, 1999.

facility. On April 1, 1999, Dr. Bailey filed an original answer generally denying the Hanzis' allegations.

On September 21, 1999, the Hanzis moved for an extension of time to file an expert report. On September 24, 1999, Dr. Bailey moved to dismiss the claim because the Hanzis failed to file an expert report within 180 days of filing their original petition, in accordance with article 4590i. On October 14, 1999, Judge Carol R. Haberman granted the Hanzis' motion for extension of time finding that the Hanzis' conduct was not consciously indifferent.[2] On that same day, the Hanzis filed the expert report of Dr. Robert Joyner. On October 21, 1999, Dr. Bailey filed objections to Dr. Joyner's report, a motion challenging the sufficiency of the expert's report, and a motion to dismiss the claim. On November 9, 1999, Judge David A. Berchelmann presided over a hearing on Dr. Bailey's objections and motions about the expert report. On November 15, 1999, the Hanzis filed a supplement and clarification to Dr. Joyner's expert report and a report by Dr. Henry Cabin, a board certified cardiologist, which concurred with Dr. Joyner's report. On November 19, 1999, Judge Berchelmann sustained Dr. Bailey's objections to the expert report and qualifications of Dr. Joyner, but denied Dr. Bailey's motion to dismiss.

On December 21, 1999, the Hanzis filed a motion to clarify Judge Haberman's October 14, 1999 order extending the time to file an expert report. On January 3, 2000, Judge Haberman clarified that the "30 day 'grace period' contemplated by Article 4590i, § 13.01(g) expired on October 14, 1999 ... Any report filed after that date is considered late for the purposes of Article 4590i § 13.01." Based on Judge Haberman's clarification of her previous ruling, on January 3, 2000, Dr. Bailey filed a motion for reconsideration of the motion to dismiss. On February 3, 2000, the Hanzis filed a motion for reconsideration of objection to the expert report seeking to have Judge Berchelmann overturn his previous order excluding Dr. Joyner's report. At a hearing on February 4, 2000, Judge Berchelmann heard the motions of both parties and on March 21, 2000, ordered that the case be dismissed with prejudice.

On appeal, the Hanzis complain that the trial court erred in excluding the expert report and dismissing the Hanzis' case, and that the standard of review should be de novo.

## Standard of Review

In their third issue, the Hanzis complain that the standard for reviewing a case dismissed under article 4590i should be de novo instead of abuse of discretion. The Hanzis argue that this court should adopt the position taken in *Palacios v. American Transitional Care Centers of Texas, Inc.,* 4 S.W.3d 857, 860 (Tex.App.—Houston [1st Dist.] 1999, pet. granted). In *Palacios,* the court determined that a reviewing court should use a summary judgment standard when reviewing a dismissal of a health care liability claim for failing to provide an expert report in compliance with article 4590i, section 13.01, rather

2. The 180–day deadline plus the 30–day extension would have ended on October 7, 1999. Judge Haberman, however, had the discretion to grant a motion to extend the deadline for filing an expert report 217 days past the time the original petition was filed. *See Presbyterian Healthcare Systems v. Afangideh,* 993 S.W.2d 319, 323 (Tex.App.—Eastland 1999, pet. denied); *Roberts v. Medical City Dallas Hosp., Inc.,* 988 S.W.2d 398, 404 (Tex.App.—Texarkana 1999, pet. denied); *Horsley–Layman v. Angeles,* 968 S.W.2d 533, 536–37 (Tex.App.—Texarkana 1998, no pet.); *McClure v. Landis,* 959 S.W.2d 679, 681–82 (Tex.App.—Austin 1997, pet. denied).

than an abuse of discretion standard. *See Palacios,* 4 S.W.3d at 860. The court stated:

> Under our new rule 166a(i), which is intended to make it easier for defendants like the Hospital to win a summary judgment, "... the [plaintiff] is not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." (citations omitted). · We doubt that a plaintiff must produce more proof now, at this preliminary stage, than he would have to produce in responding to a motion for summary judgment. Consequently, we decline to protect dismissals under section 13.01(e) with a standard of review less stringent than that for summary judgments.

*See id.* Later, the court distinguished between applying the *Palacios* de novo standard of review when the sole issue is whether a timely filed "expert report" complies with article 4590i, sections 13.01(*l*), (r)(6) and applying an abuse of discretion standard when reviewing a trial court's dismissal of a cause of action under section 13.01(e). *See Jackson v. Reardon,* 14 S.W.3d 816, 818 (Tex.App.—Houston [1st Dist.] 2000, no pet.).

■ Nonetheless, this court has previously held that the standard for reviewing a trial court's dismissal of a health care liability claim for failing to comply with the expert report provisions of article 4590i, section 13.01 is abuse of discretion. *See Schorp v. Baptist Memorial Health System,* 5 S.W.3d 727, 731 (Tex.App.—San Antonio 1999, no pet.); *Wood v. Tice,* 988 S.W.2d 829, 830 (Tex.App.—San Antonio 1999, pet. denied).[3] Whether a trial court abused its discretion is dependent on whether it acted without reference to any guiding rules or principles. *See Schorp,* 5 S.W.3d at 731. An abuse of discretion does not occur where the trial court bases its decision on conflicting evidence. *See id.* An abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *See id.* In applying this standard, we defer to the trial court's factual determinations, but review questions of law de novo. *See Wood,* 988 S.W.2d at 830; *see also Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex. 1989) (describing statutory construction as a question of law). Because we have previously determined that the standard for reviewing this type of case is abuse of discretion, we decline to adopt the de novo standard. Accordingly, we overrule this issue.

## Compliance with Article 4590i

In their second issue, the Hanzis claim that Judge Haberman abused her discretion by only granting a one-day extension

3. Other courts of appeals have also applied the abuse of discretion standard in reviewing a dismissal of a health care liability claim. *See Tesch v. Stroud,* 28 S.W.3d 782, 785 (Tex. App.—Corpus Christi 2000, pet. denied); *Finley v. Steenkamp,* 19 S.W.3d 533, 538 (Tex. App.—Fort Worth 2000, no pet.); *Jackson v. Reardon,* 14 S.W.3d 816, 818 (Tex.App.— Houston [1st Dist.] 2000, no pet.); *Tibbetts v. Gagliardi,* 2 S.W.3d 659, 663 (Tex.App.— Houston [14th Dist.] 1999, pet. denied); *Martinez v.. Lakshmikanth,* 1 S.W.3d 144, 146 (Tex.App.—Corpus Christi 1999, pet denied); *Presbyterian Healthcare Sys. v. Afangideh,* 993 S.W.2d 319, 323 (Tex.App.—Eastland 1999, pet denied); *Estrello v. Elboar,* 965 S.W.2d 754, 758 (Tex.App.—Fort Worth 1998, no pet.). Courts of appeals have also applied the abuse of discretion standard in reviewing a denial of a motion to extend time to file an expert report. *See Nguyen v. Kim,* 3 S.W.3d 146, 151 (Tex.App.—Houston [14th Dist.] 1999, no pet.); *Roberts v. Medical City Dallas Hosp., Inc.,* 988 S.W.2d 398, 402 (Tex.App.— Texarkana 1998, pet. denied); *Horsley–Layman v. Angeles,* 968 S.W.2d 533, 536–37 (Tex. App.—Texarkana 1998, no pet.).

on October 14, 1999, instead of the mandatory 30 days required by article 4590i, section 13.01(g), which would have extended the deadline to file the expert report to November 15, 1999.

■ The legislature enacted article 4590i to curtail frivolous claims against physicians and other health care providers. *See Wood,* 988 S.W.2d at 830; *Horsley-Layman v. Angeles,* 968 S.W.2d 533, 537 (Tex.App.—Texarkana 1998, no pet.). To that end, section 13.01 requires a plaintiff to provide each defendant with one or more expert reports relating to liability and causation. *See* Tex.Rev.Civ.Stat.Ann. art. 4590i, § 13.01(i-j) (Vernon Supp.2000); *Wood,* 988 S.W.2d at 830. Section 13.01(d) requires that the expert report must be "furnish[ed]," together with a curriculum vitae, no later than 180 days after the suit is filed. *See* Tex.Rev.Civ.Stat.Ann. art. 4590i, § 13.01(d) (Vernon Supp.2000); *Wood,* 988 S.W.2d at 830. The statute provides two exceptions to the 180 day deadline. First, subsection (f) provides that the trial court may extend the time period under subsection (d) for an additional 30 days for "good cause." *See* Tex. Rev.Civ .Stat.Ann. art. 4590i, § 13.01(f) (Vernon Supp.2000); *Schorp,* 5 S.W.3d at 732. Second, subsection (g) provides:

> Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing the court finds that the failure of the claimant or the claimant's attorney was *not intentional or the result of conscious indifference but was the result of accident or mistake,* the court *shall* grant a grace period of 30 days to permit the claimant to comply with that subsection.

*See* Tex.Rev.Civ.Stat.Ann. art. 4590i, § 13.01(g) (Vernon Supp.2000) (emphasis added); *Schorp,* 5 S.W.3d at 732. If the plaintiff fails to timely provide the report, the trial court "shall, on the motion of the affected physician or health care provider, enter an order" dismissing the suit with prejudice. *See* Tex.Rev.Civ.Stat.Ann. art. 4590i, § 13.01(e) (Vernon Supp.2000); *Wood,* 988 S.W.2d at 830–31.

In the instant case, the Hanzis filed their lawsuit on March 8, 1999. According to section 13.01, the Hanzis had 180 days to file an expert report, which would have been due on September 7, 1999. On September 21, 1999, two weeks after the expert report was due, the Hanzis requested an extension of time to file their expert report, under section 13.01(g). On October 14, 1999, Judge Haberman extended the deadline under section 13.01(g), finding that the Hanzis' conduct was not consciously indifferent, and then later clarified her order stating, "Any report filed after that date [October 14, 1999] is considered late for the purposes of Article 4590i § 13.01." In addition, the Hanzis filed the supplemental expert reports of Dr. Joyner and Dr. Cabin on November 15, 1999. If Judge Haberman would have granted a 30–day extension from the date of her October 14, 1999 order, the supplemental reports would have been timely filed within the deadline, which was November 15, 1999. Accordingly, we must determine whether Judge Haberman abused her discretion when she granted the extension on October 14, 1999 and made the deadline to file the report the same day, instead of giving the Hanzis an extra 30 days to file the expert report.

Dr. Bailey argues that nothing in the language of section 13.01(g) expressly or impliedly limits the 30–day grace period to the 30 days immediately following the order granting section 13.01(g) relief. Dr. Bailey relies on *Broom v. MacMaster,* 992 S.W.2d 659, 663 (Tex.App.—Dallas 1999, no pet.) to support his contention that

relief under section 13.01(g) is considered a "floating window." The court in *Broom* stated:

> Unlike subsections (f) and (h), this subsection [g] does not operate to extend the 180 day period set out in subsection (d), but instead provides for a thirty day window of time within which the plaintiff may take the actions required by subsection (d). The provision is a "safety valve" to prevent the forfeiture of claims through an accident or mistake that causes a party to fail to comply with subsection (d) in the first instance.

*See Broom,* 992 S.W.2d at 663. Dr. Bailey claims that this window allows the trial court to retroactively grant a 30–day extension. Dr. Bailey argues that the Hanzis filed the expert report on October 14, 1999, prior to the hearing with Judge Haberman. At the hearing on October 14, 1999, the Hanzis' lawyer testified that the expert report he had filed earlier that day was filed in order to satisfy the procedural requirements of article 4690i, section 13.01. As a result, Dr. Bailey argues that the trial court can hardly be accused of abusing its discretion in ruling that the Hanzis needed no additional time to file their expert report.

■ The Hanzis, however, argue that the trial court lacks discretion to limit the grace period to less than 30 days because the trial court found that the failure to file the expert report was a result of an accident or mistake, thereby granting the motion to extend under section 13.01(g). We agree. Section 13.01(g) specifically states, "the trial court *shall* grant a grace period of 30 days." *See* TEX.REV.CIV.STAT.ANN. art. 4590i, § 13.01(g) (Vernon Supp.2000)

(emphasis added). Although the trial court had the discretion to find that the Hanzis' actions were not a result of "conscious indifference" under section 13.01(g), the trial court lacked discretion to grant the 30–day grace period. In following the explicit language of the statute, by granting the motion to extend under section 13.01(g), the trial court should have granted a grace period of 30 days from the date of its order. *See Wright v. Ector County Indep. Sch. Dist.,* 867 S.W.2d 863, 868 (Tex.App.—El Paso 1993, no writ) ("shall" is mandatory, "may" is permissive). Since the statute provides that by granting a motion to extend, the trial court "shall grant a grace period of 30 days," the trial court abused its discretion when it ordered that any report filed after October 14, 1999 was considered late for the purposes of article 4590i, section 13.01 because granting the motion to extend under subsection (g) and then not granting the required 30–day extension was not within the explicit language of the statute. Because the trial court abused its discretion, we sustain this issue.

Having sustained this issue, we find that the supplemental reports of Dr. Joyner and Dr. Cabin were timely filed on November 15, 1999. Dr. Bailey did not challenge Dr. Cabin's qualifications or the sufficiency of his expert report to satisfy the requirements of article 4590i.[4] Therefore, Dr. Cabin's report, which was timely filed, was sufficient to satisfy the requirements of article 4590i, and the trial court erred in dismissing the cause. Accordingly, we need not address the Hanzis' first issue about whether Dr. Joyner was qualified as an expert witness and whether his expert

---

4. During the February 4, 2000 hearing on Dr. Bailey's motion to dismiss, Dr. Bailey's lawyer admitted that Dr. Cabin's "expertise and qualifications are undisputed," and said, "Judge, if you want to see a good report, the report that should have been filed when Judge Haberman gave him the extension, look at Dr. Cabin's. We wouldn't be here if he would have filed this timely."

report was sufficient. We reverse the trial court's judgment and remand the cause to the trial court.